## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| GERMARKCUS LAVEL BROWN, | **Case No.: 6:22-cv-00667** |
| Plaintiff, | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| EXPERIAN INFORMATION SOLUTIONS, INC.; and TRANS UNION LLC, | **1. FCRA, 15 U.S.C. §1681 *et seq.*** |
| Defendants. | |

Plaintiff Germarkcus Lavel Brown ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendants Experian Information Solutions, Inc. ("Experian") and Trans Union LLC ("Trans Union") (referred collectively as "Defendants").

## I.    INTRODUCTION.

1.    Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq.* by the Defendants. Plaintiff contends Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's "consumer reports" as defined in 15 U.S.C. §1681a(d), and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. §1681a(d) include both credit file disclosures

obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II.    JURISDICTION AND VENUE.

2.    This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331 because Plaintiff alleges violations of the Fair Credit Reporting Act, a federal law. *See* 15 U.S.C. §1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.    Venue in the Middle District of Florida is proper pursuant to 28 U.S.C. §1391 because Defendants regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III.    PARTIES.

4.    Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5.    Plaintiff is a natural person who resides in Lake Mary, FL.

6.    Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

7.    Experian is a "consumer reporting agency," as defined in 15 U.S.C. §1681a(f). On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the

purpose of furnishing "consumer reports," as defined in 15 USC §1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

8.    Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. §1681a(f). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. §1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served at their Registered Agent Prentice Hall Corporation at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

9.    During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Florida and conducted business in the State of Florida on a routine and systematic basis.

10.    Defendants regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. §1681a(d), to third parties. Defendants regularly furnish consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. §1681a(f) of the FCRA.

11.     During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

12.     Any violations by Defendants were not in good faith, were knowing, negligent, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

## IV.    FACTUAL BACKGROUND.

13.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

14.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

15.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

16.     The FCRA is intended to ensure consumer reporting agencies ("CRAs") exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

17.     Defendants, two of the three major consumer reporting agencies (at times referred to collectively as "the CRAs," and individually as a "CRA") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

18.     Defendants regularly purchase and obtain consumer bankruptcy information to include in consumer reports.

19.     Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

20.     Defendants obtain consumer information from various sources. Some consumer information is sent directly to Defendants by furnishers, and other information is independently gathered by Defendants from third party

providers/vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

21.    Defendants regularly seek out and procure consumer bankruptcy filing and discharge information, with the intention of including it in the consumer reports Defendants sell to third parties for a profit.

22.    The diligence Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in Defendants' subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

23.    Defendants' unreasonable policies, procedures, and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by §1681e(b).

24.    Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in their own files.

25.    The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions.

26.    Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of

reported debt, payment history, date of delinquencies contained in Defendants' reports.

27.    The information Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

28.    FICO Scores are calculated using information contained in Defendants' consumer reports.

29.    FICO and other third-party algorithms use variables or "attributes" derived from a consumer report to calculate a person's "credit score," which is a direct reflection of their creditworthiness.

30.    FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

    a.    "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

    b.    The "amount of debt" a consumer owes has a major impact on their

credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

31.    Lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

32.    DTI compares the total amount a consumer owes to the total amount a consumer earns.

33.    Defendants regularly provide information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Defendants.

34.    A consumer's income, however, is not included in their consumer report; only their "amount of debt" is.

35.    The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (e.g., higher interest rates and lower credit limits).

36.    A consumer who has obtained a bankruptcy discharge and has an account that is inaccurately reporting with outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately

reporting with a zero-dollar balance.

37.    Defendants are aware that the effect of a Discharge Order in a Chapter 13 Bankruptcy is to discharge unsecured debts that are listed in Plaintiff's bankruptcy petition.

38.    Defendants are further aware that the default rule is that all unsecured debts will be listed and discharged in Chapter 13 bankruptcy and that only on rare occasions will an unsecured debt not be discharged upon completion of a Chapter 13 plan.

39.    Additionally, information indicating that a specific debt has not been discharged, but instead was successfully challenged through an adversary proceeding, is retrieved from the same sources from which the CRA Defendants independently obtain consumer bankruptcy case information.

40.    Defendants are also notified of consumer bankruptcies by furnishers of information, and from the information Defendants independently gather from third parties.

41.    Defendants' unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 13 Bankruptcy.

42.    Experian implemented an automated software "bankruptcy scrub" procedure in 2009 following a settlement agreement in *White v. Experian Info. Sols.,*

*Inc.*, No. SACV 05-1070 DOC (MLGx), (C.D. Cal. 2008), which will automatically update certain accounts to zero balance and "discharged in bankruptcy" when they predate a Chapter 7 bankruptcy filing date.

43.    Furthermore, Defendants failed to implement such an automated procedure for unsecured Chapter 13 debts, even though Defendants know that upon discharge, such debts are treated the same as Chapter 7 debts (discharged with zero balance) if the debts were listed in the petition. Defendants also know that debtors must swear under penalty of perjury that they have listed "all" of their unsecured debts.

44.    Defendants' unreasonable policies and procedures cause them to regularly report consumer information without verifying its accuracy.

45.    Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update unsecured pre-bankruptcy Chapter 13 debts as required by §1681(e)(b).

46.    Defendants routinely report inaccurate, and materially misleading information about consumers like Plaintiff, without verifying or updating the information as required by §1681(e)(b), despite possessing information: inconsistent with the reported information and/or processes that establish the reported information is inaccurate.

47.    Rather than follow reasonable procedures to assure maximum possible

accuracy, as required by the FCRA, Defendants frequently report information regarding pre- and post-bankruptcy debts based on incomplete or knowingly inaccurate information.

48.    Defendants regularly publish consumer information that conflicts with information: provided by data furnishers to the Defendants, already included in the Defendants' credit files, contained in public records that the Defendants regularly access, and/or sourced through the Defendants' independent and voluntary efforts.

49.    Further, Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished or reported information, and/or information contained in Defendants' own files.

50.    Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendants for their inaccurate consumer reporting following a Chapter 13 discharge.

51.    Thus, Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, which cause Defendants to report inaccurate balances, account statuses, payment histories, and/or payment statuses.

52.    Upon information and belief, Experian is currently in the process of implementing a bankruptcy scrub for Chapter 13 unsecured debts because of the volume of recent lawsuits filed for its inaccurate post-bankruptcy reporting.

53.    It is not known whether Trans Union and Equifax are also developing

Chapter 13 bankruptcy scrubs.

*Allegations Concerning Plaintiff's Bankruptcy*

54.    Plaintiff filed a Chapter 13 Bankruptcy on or about April 5, 2017, in the United States Bankruptcy Court for the Northern District of Georgia (Case No. 17-56404).

55.    Plaintiff complied with all obligations and made all payments during the Chapter 13 Bankruptcy.

56.    Accordingly, Plaintiff received an Order of Discharge on or about July 26, 2021.

57.    Thereafter, Plaintiff was not personally liable for any of their unsecured dischargeable debts. Upon entry of Plaintiff's Discharge Order, all of Plaintiff's dischargeable debts had zero-dollar balances.

58.    Upon information and belief, Defendants each prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 13 Bankruptcy.

59.    Defendants obtained notice of Plaintiff's bankruptcy discharge through their routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendants in Plaintiff's consumer reports.

60.    In the Public Records section of Plaintiff's consumer reports,

Defendants each included the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged.

61.    Defendants also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

62.    Defendants are aware that CRAs are generally required to report accounts included in a consumer's Chapter 13 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

63.    Defendants should not have reported Plaintiff's post-petition debts as included in or discharged in Chapter 13 bankruptcy.

64.    Defendants should **not** have reported accounts as "included in the bankruptcy" accounts that were opened after Plaintiff filed their bankruptcy petition.

*Allegations Specific to Experian*

65.    Experian inaccurately reported Plaintiff's First Premier Bank accounts (the "2FPB Accounts"), account ending with ********8590 opened in or around December 2017, and account ending with ********5391, opened in or around November 2019.

66.     Experian inaccurately reported Plaintiff's Credit One Bank account (the "COB Account"), ending with ********9055, opened in or around March 2018.

67.     Experian inaccurately reported Plaintiff's The Bank of Missouri account (the "TBOM Account"), ending with ********6165, opened in or around May 2020.

68.     Experian inaccurately reported the 2FPB, COB and TBOM Accounts as having been included in Plaintiff's bankruptcy, and subject to bankruptcy coding that conveys to creditors/lenders that the 2FPB, COB and TBOM Accounts were discharged even though Plaintiff opened those Accounts years after filing for bankruptcy, continued to use the accounts and to make payments on them.

69.     Plaintiff has made all payments on the 2FPB, COB and TBOM Accounts generally in a timely manner.

70.     First Premier Bank, Credit One Bank and The Bank of Missouri further furnished information to Experian that indicated Plaintiff's debt on the 2FPB, COB and TBOM Accounts were not included or discharged in bankruptcy, and were being regularly paid, but Experian rejected or otherwise overrode the data they received.

71.     The 2FPB, COB and TBOM Accounts were not included in Plaintiff's bankruptcy and were not discharged. Therefore, the 2FPB, COB and TBOM Accounts should have been reported as open and being paid as agreed or with minor delays.

72.    However, Experian inaccurately reported the 2FPB, COB and TBOM Accounts as discharged in bankruptcy and closed.

73.    Experian's reporting of the 2FPB, COB and TBOM Accounts was patently false/incorrect and therefore inaccurate.

74.    If not false/incorrect, Experian's reporting of the 2FPB, COB and TBOM Accounts is materially misleading, as the 2FPB, COB and TBOM Accounts should have been reporting as an open and current instead of discharged in bankruptcy.

75.    Experian's reporting of the 2FPB, COB and TBOM Accounts was patently false and materially misleading, as Plaintiff was trying to rebuild his credit.

76.    Experian failed to report the 2FPB, COB and TBOM Account's accurate payment history and ongoing payments despite knowledge of the absence of this account through the bankruptcy information Experian receives and/or knowledge from the furnishers First Premier Bank, Credit One Bank and The Bank of Missouri.

77.    Experian reported inaccurate payment statuses that indicated the 2FPB, COB and TBOM Accounts were included in and/or discharged in bankruptcy, instead of open and current.

78.    Notably, the other national consumer reporting agency Equifax Information Services, LLC did not inaccurately report the 2FPB, COB and TBOM

Accounts like Experian.

<div align="center"><em><u>Allegations Specific to Trans Union</u></em></div>

79.    Trans Union inaccurately reported Plaintiff's Navy Federal CU account (the "NFCU Account"), ending with ********4238, opened in or around February 2018.

80.    Trans Union inaccurately reported Plaintiff's Credit One Bank account (the "COB Account"), ending with ********9055, opened in or around March 2018.

81.    Trans Union inaccurately reported Plaintiff's First Premier Bank account (the "1FPB Account"), account ending with ********5391, opened in or around November 2019.

82.    Trans Union inaccurately reported the 1FPB, COB and NFCU Accounts as having been included in Plaintiff's bankruptcy, and subject to bankruptcy coding that conveys to creditors/lenders that the 1FPB, COB and NFCU Accounts were discharged even though Plaintiff opened those Accounts years after filing for bankruptcy, continued to use the accounts and to make payments on them.

83.    Plaintiff has made all payments on the 1FPB, COB and NFCU Accounts generally in a timely manner.

84.    First Premier Bank, Credit One Bank and Navy Federal CU further furnished information to Trans Union that indicated Plaintiff's debt on the 1FPB, COB and NFCU Accounts were not included or discharged in bankruptcy, and were

being regularly paid, but Experian rejected or otherwise overrode the data they received.

85.    The 1FPB, COB and NFCU Accounts were not included in Plaintiff's bankruptcy and were not discharged. Therefore, the 1FPB, COB and NFCU Accounts should have been reported as open and being paid as agreed or with minor delays.

86.    However, Trans Union inaccurately reported the 1FPB, COB and NFCU Accounts as discharged in bankruptcy and closed.

87.    Trans Union's reporting of the 1FPB, COB and NFCU Accounts was patently false/incorrect and therefore inaccurate.

88.    If not false/incorrect, Trans Union's reporting of the 1FPB, COB and NFCU Accounts is materially misleading, as the 1FPB, COB and NFCU Accounts should have been reporting as an open and current instead of discharged in bankruptcy.

89.    Trans Union's reporting of the 1FPB, COB and NFCU Accounts was patently false and materially misleading, as Plaintiff was trying to rebuild her credit.

90.    Trans Union failed to report the 1FPB, COB and NFCU Account's accurate payment history and ongoing payments despite knowledge of the absence of this account through the bankruptcy information Trans Union receives and/or knowledge from the furnishers First Premier Bank, Credit One Bank and Navy

Federal CU.

91.    Trans Union reported inaccurate payment statuses that indicated the 1FPB, COB and NFCU Accounts were included in and/or discharged in bankruptcy, instead of open and current.

92.    Notably, the other national consumer reporting agency Equifax Information Services, LLC did not inaccurately report the 1FPB, COB and NFCU Accounts like Trans Union.

*Plaintiff's Damages*

93.    Upon information and belief, had Defendants accurately reported Plaintiff's accounts, Plaintiff's credit scores and/or DTI would have been better.

94.    After Plaintiff's bankruptcy discharge, Plaintiff applied for credit from multiple potential creditors, including Credit Plus, Merrick Bank, US Small Business Administration, and Navy Federal Credit Union, which applications were denied, due to Defendants' inaccurate reporting.

95.    As a direct result of Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

96.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational harm, violation of privacy, humiliation, stress, anger,

frustration, shock, embarrassment, and anxiety.

## V.    COUNT I.

### Violation of the Fair Credit Reporting Act, 15 U.S.C. §1681e(b)

### against Experian

97.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint —except for paragraphs 79 through 92— as though fully set forth herein at length.

98.    The FCRA requires CRAs, like Experian, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. §1681e(b).

99.    Experian negligently and willfully violated 15 U.S.C. §1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of the information they reported about Plaintiff's pre- and post-bankruptcy debts after Plaintiff received a Discharge Order.

100.    Experian independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily included it in Plaintiff's reports.

101.    When Experian voluntarily procured and reported Plaintiff's bankruptcy information, Experian had an obligation to follow reasonable procedures to ensure Experian reported the bankruptcy discharge and its effect(s) on pre- and post-bankruptcy debts with maximal accuracy.

102.   Experian received notice of Plaintiff's bankruptcy discharge through public records, their own files, and information provided by data furnishers.

103.   Individual furnishers of account information also notified Experian of Plaintiff's bankruptcy, as evidenced by other tradelines in Plaintiff's consumer report that are labeled included and discharged in bankruptcy.

104.   Experian had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information Experian published in Plaintiff's consumer reports, including Plaintiff's bankruptcy case number, court, date of filing, and date of discharge.

105.   Despite knowledge of Plaintiff's bankruptcy, Experian inaccurately reported the 2FPB, COB and TBOM Accounts, which were opened after Plaintiff's Chapter 13 Bankruptcy, and Experian reported those Accounts as "included in bankruptcy" and closed.

106.   Experian knew or should have known of their obligations under the FCRA, especially those pertaining to debts incurred _after_ the filing of a bankruptcy petition.

107.   These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and exemplified in prior cases involving Experian from which Experian is on notice of their unreasonable procedures concerning the reporting of discharged debts.

108.   Additionally, Experian possesses or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those arising after a consumer file for Chapter 13 Bankruptcy.

109.   Despite knowledge of these legal obligations, Experian willfully and knowingly breached their duties in violation of 15 U.S.C. §1681e(b). Accordingly, Experian deprived Plaintiff of Plaintiff's rights as a consumer under the FCRA.

110.   Not only did Experian have prior notice of their unreasonable procedures for reporting discharged debts, but they also possessed information from which they should have known the information reported about Plaintiff was inaccurate.

111.   Experian inaccurately reported the 2FPB, COB and TBOM Accounts that Experian knew were opened years after Plaintiff's Chapter 13 petition was filed, and were not included and discharged by Plaintiff's bankruptcy. Experian inaccurately reported the 2FPB, COB and TBOM Accounts as included in Plaintiff's bankruptcy, even though those Accounts were opened years after Plaintiff's bankruptcy, were not included in Plaintiff's bankruptcy, and are being/have been paid.

112.   Experian violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/consumer report.

113.    Experian also violated 15 U.S.C. §1681e(b) by failing to report accurate information when Experian knew or should have known the information Experian was reporting is inaccurate, and/or otherwise contradicted by information known by Experian, reported to Experian, and reasonably available to Experian.

114.    Experian's violations of 15 U.S.C. §1681e(b) were willful.

115.    Alternatively, Experian's violations of 15 U.S.C. §1681e(b) were negligent.

116.    Experian's inaccurate reporting damaged Plaintiff's creditworthiness.

117.    Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Experian inaccurately reporting debts as discharged in bankruptcy when they were actually paid or being paid; and by Experian's inaccurately reporting the 2FPB, COB and TBOM Accounts that were open and being paid or paid as agreed, as having been discharged in bankruptcy.

118.    Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, loss of sleep, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

119.    Experian is a direct and proximate cause of Plaintiff's damages.

120.    Experian is a substantial factor in Plaintiff's damages.

121.    Therefore, Experian is individually liable for actual and statutory

damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. §1681 *et seq*.

## VI.    COUNT II.

### Violation of the Fair Credit Reporting Act, 15 U.S.C. §1681e(b)

### against Trans Union

122.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint —except for paragraphs 65 through 78, and 97 through 121— as though fully set forth herein at length.

123.   The FCRA requires CRAs, like Trans Union, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. §1681e(b).

124.   Trans Union negligently and willfully violated 15 U.S.C. §1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of the information they reported about Plaintiff's pre- and post-bankruptcy debts after Plaintiff received a Discharge Order.

125.   Trans Union independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily included it in Plaintiff's reports.

126.   When Trans Union voluntarily procured and reported Plaintiff's bankruptcy information, Trans Union had an obligation to follow reasonable procedures to ensure Trans Union reported the bankruptcy discharge and its effect(s)

on pre- and post-bankruptcy debts with maximal accuracy.

127.   Trans Union received notice of Plaintiff's bankruptcy discharge through public records, their own files, and information provided by data furnishers.

128.   Individual furnishers of account information also notified Trans Union of Plaintiff's bankruptcy, as evidenced by other tradelines in Plaintiff's consumer report that are labeled included and discharged in bankruptcy.

129.   Trans Union had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information Trans Union published in Plaintiff's consumer reports, including Plaintiff's bankruptcy case number, court, date of filing, and date of discharge.

130.   Despite knowledge of Plaintiff's bankruptcy, Trans Union inaccurately reported the 1FPB, COB and NFCU Accounts, which were opened after Plaintiff's Chapter 13 Bankruptcy, and Trans Union reported those Accounts as "included in bankruptcy" and closed.

131.   Trans Union knew or should have known of their obligations under the FCRA, especially those pertaining to debts incurred after the filing of a bankruptcy petition.

132.   These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and exemplified in prior cases involving Trans Union from which Trans Union is on

notice of their unreasonable procedures concerning the reporting of discharged debts.

133.    Additionally, Trans Union possesses or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those arising after a consumer file for Chapter 13 Bankruptcy.

134.    Despite knowledge of these legal obligations, Trans Union willfully and knowingly breached their duties in violation of 15 U.S.C. §1681e(b). Accordingly, Trans Union deprived Plaintiff of Plaintiff's rights as a consumer under the FCRA.

135.    Not only did Trans Union have prior notice of their unreasonable procedures for reporting discharged debts, but they also possessed information from which they should have known the information reported about Plaintiff was inaccurate.

136.    Trans Union inaccurately reported the 1FPB, COB and NFCU Accounts that Trans Union knew were opened years after Plaintiff's Chapter 13 petition was filed, and were not included and discharged by Plaintiff's bankruptcy. Trans Union inaccurately reported the 1FPB, COB and NFCU Accounts as included in Plaintiff's bankruptcy, even though those Accounts were opened years after Plaintiff's bankruptcy, were not included in Plaintiff's bankruptcy, and are being/have been paid.

137.  Trans Union violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/consumer report.

138.  Trans Union also violated 15 U.S.C. §1681e(b) by failing to report accurate information when Trans Union knew or should have known the information Trans Union was reporting is inaccurate, and/or otherwise contradicted by information known by Trans Union, reported to Trans Union, and reasonably available to Trans Union.

139.  Trans Union's violations of 15 U.S.C. §1681e(b) were willful.

140.  Alternatively, Trans Union's violations of 15 U.S.C. §1681e(b) were negligent.

141.  Trans Union's inaccurate reporting damaged Plaintiff's creditworthiness.

142.  Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Trans Union inaccurately reporting debts as discharged in bankruptcy when they were actually paid or being paid; and by Trans Union's inaccurately reporting the 1FPB, COB and NFCU Accounts that were open and being paid or paid as agreed, as having been discharged in bankruptcy.

143.  Plaintiff also suffers interference with daily activities caused by other

harm including, but not limited to, emotional distress, loss of sleep, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

144.    Trans Union is a direct and proximate cause of Plaintiff's damages.

145.    Trans Union is a substantial factor in Plaintiff's damages.

146.    Therefore, Trans Union is individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. §1681 *et seq*.

## VII.    <u>PRAYER FOR RELIEF.</u>

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

a.    Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. §1681e(b);

b.    An award of actual damages pursuant to 15 U.S.C. § §1681n(a)(1) or 1681o(a)(1);

c.    An award of statutory damages pursuant to 15 U.S.C. § §1681n(a)(1) and 1681o(a)(1);

d.    An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. §1681n(a)(2),

e.    Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and 1681o(a)(2); and

f.       Such other and further relief as this Honorable Court may deem just and

proper, including any applicable pre-judgment and post-judgment interest,

and/or declaratory relief.

## VIII. <u>**JURY DEMAND.**</u>

Plaintiff hereby demands jury trial on all issues so triable.

<div style="margin-left: 40%;">

<u>*/s/ Santiago J Teran*</u>
Santiago J Teran
FL Bar No. 1018985
NY Bar No. 5528906
Price Law Group, APC
santiago@pricelawgroup.com
2125 Biscayne Blvd., Ste 206
Miami, FL 33137
Direct: (347) 946-7990
Facsimile: (818) 600-5486
*Attorneys for Plaintiff*
*Germarkcus Lavel Brown*

</div>